http://www.va.gov/vetapp16/Files6/1644932.txt

Citation Nr: 1644932 
Decision Date: 11/30/16 Archive Date: 12/09/16

DOCKET NO. 10-34 890 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Montgomery, Alabama

THE ISSUES

1. Entitlement to a disability rating in excess of 10 percent for right ear hearing loss.

2. Entitlement to service connection for right tympanic membrane perforation, claimed as right ear disease. 

REPRESENTATION

Veteran represented by: Disabled American Veterans

WITNESS AT HEARING ON APPEAL

The Veteran

ATTORNEY FOR THE BOARD

K. Kardian, Associate Counsel

INTRODUCTION

The Veteran served on active duty in the Army from June 1972 to July 1973. 

This matter is before the Board of Veterans' Appeals (Board) on appeal from a July 2009 rating decision issued by the Department of Veterans Affairs (VA) Regional Office (RO) in Montgomery, Alabama. 

The Veteran testified at a Travel Board hearing before the undersigned in May 2013. A transcript of the hearing is associated with the claims files.

When a Veteran files a claim for an increased rating, he is presumed to be seeking the maximum benefit under any applicable theory, including TDIU and special monthly compensation (SMC). See generally Roberson v. Principi, 251 F.3d 1378 (Fed. Cir. 2001); Rice, 22 Vet. App. 447 see also, Akles v. Derwinski, 1 Vet. App. 118 (1991). The Veteran raised the issue of TDIU in September 2014 and such has been adjudicated, and the evidence of record does not illustrate evidence of unemployability as a result of the Veteran's service-connected disabilities. Therefore, the Board finds the issue of entitlement to TDIU has not been raised.

Regarding SMC, the Veteran does not have a single disability rated at 100 percent with an additional disability rated at 60 percent or more, even when considering TDIU and temporary total ratings. 38 U.S.C.A. § 1114(s); Bradley v. Peake, 22 Vet. App. 280 (2008); Buie v. Shinseki, 24 Vet. App. 242 (2010); 38 C.F.R. §§ 3.350(i), 4.29, 4.30.There is no lay or medical evidence the Veteran is housebound in fact, requires aid and attendance, or that his disabilities result in loss of use of a limb or blindness or deafness. 38 U.S.C.A. §§ 1114(s), (l), (k); 38 C.F.R. § 3.350(a), (b), (i). As such, the Board will not infer the issue of entitlement to SMC. 

The Board remanded the issues on appeal for additional development in November 2014. The directives having been substantially complied with, the matter again is before the Board. See Stegall v. West, 11 Vet. App. 268, 271 (1998).

The Board has reviewed the electronic records maintained in Virtual VA and Veterans Benefits Management System (VBMS) to ensure consideration of the totality of the evidence.

FINDINGS OF FACT

1. Throughout the appeal, the right ear hearing loss disability has been manifested by no more than Level XI in the right ear and Level I in the left ear.

2. A right ear disability, to include right tympanic membrane perforation did not manifest in-service, or within the first post-service year, and is not shown to be causally or etiologically related to service or a service-connected disability. 

CONCLUSIONS OF LAW

1. The criteria for a rating in excess of 10 percent for right ear hearing loss have not been met. 38 U.S.C.A. § 1155, 5103, 5103A, 5107 (West 2014); § 38 C .F.R. §§ 3.321, 4.7, 4.85, 4.86, Diagnostic Code 6100 (2015).

2. The criteria for service connection for a right ear disability, to include right tympanic membrane perforation, and secondary to a service-connected disability, have not been met. 38 U.S.C.A. §§ 1101, 1110, 1112, 1113, 1137, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.307, 3.309, 3.310 3.385 (2015).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Duty to Notify and Assist

VA has met all statutory and regulatory notice and duty to assist provisions with respect to the Veteran's claims. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2015).

Upon receipt of a complete or substantially complete application for benefits, VA is required to notify the Veteran and his representative, if any, of any information and medical or lay evidence that is necessary to substantiate the claim, the evidence VA will obtain on the Veteran's behalf, and the evidence the Veteran is expected to provide. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b); Quartuccio v. Principi, 16 Vet. App. 183 (2002). VCAA notice requirements apply to all five elements of a service connection claim: (1) veteran status; (2) existence of a disability; (3) a connection between the Veteran's service and the disability; (4) degree of disability; and (5) effective date of the disability. Dingess/Hartman v. Nicholson, 19 Vet. App. 473, 486 (2006). The notice must be provided to the Veteran prior to the initial adjudication of his claim. Pelegrini v. Principi, 18 Vet. App. 112 (2004). 

VA issued a VCAA letter in March 2009, prior to the initial unfavorable adjudication in July 2009. The letter advised the Veteran of what evidence was necessary to substantiate his claims, the evidence VA would obtain, the evidence the Veteran must provide, and how entitlement to service connection, disability ratings, and effective dates are determined. As this letter contained all of the necessary information listed above, the Board finds VA has met its duty to notify.

With respect to the Board hearing, the Court of Appeals for Veterans Claims held in Bryant v. Shinseki, 23 Vet. App. 488 (2010), that 38 C.F.R. 3.103(c)(2) requires that the RO official or VLJ who conducts a hearing fulfill two duties to comply with the above regulation. These duties consist of (1) the duty to fully explain the issues and (2) the duty to suggest the submission of evidence that may have been overlooked. Here, the undersigned noted the current appellate issues at the beginning of the hearing, and asked questions to clarify the Veteran's contentions and treatment history. The Veteran demonstrated through his testimony that he had actual knowledge concerning what is required to substantiate his claims. Neither the Veteran nor his representative has asserted that VA failed to comply with 38 C.F.R. 3.103(c)(2), nor have they identified any prejudice in the conduct of the hearing.

All VA treatment records have been associated with the claims file. All private and Social Security Administration (SSA) treatment records either identified or submitted by the Veteran have been associated with the claims file. No other relevant records have been identified and are outstanding. As such, the Board finds VA has satisfied its duty to assist with the procurement of relevant records. 

The duty to assist also includes providing a medical examination or obtaining a medical opinion when necessary to make a decision on a claim, as defined by law. See 38 C.F.R. § 3.159(c)(4). In this case, the Veteran was provided with VA examinations as to hearing loss in November 2009, May 2011 and January 2015. The Veteran was provided with a VA examination as to his right ear disability, in January 2015. The examinations were adequate because the examiners considered and addressed the Veteran's contentions, and conducted thorough medical examinations of the Veteran. Based on the foregoing, the Board finds the examination reports and opinions to be thorough, complete, and sufficient bases upon which to reach a decision on the Veteran's increased rating and service connection claims. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 302-05 (2008); Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). Since VA has obtained all relevant identified records and provided adequate medical examinations, its duty to assist in this case is satisfied.

II. Compliance with Prior Remand

Previously, the case was remanded in November 2014, to obtain additional treatment records and provide the Veteran with a VA examination in order to determine the current severity of his service-connected right ear hearing loss and address any additional right ear disabilities. Correspondence was sent to the Veteran in December 2014 notifying him of additional development being undertaken. See December 5, 2014 VA correspondence. The Veteran was afforded VA examinations in January 2015 addressing the current severity of his right ear hearing loss disability and additional right ear disabilities. The Board finds that there has been substantial compliance with the prior remand. 

III. Schedular Rating

Disability evaluations are determined by the application of the facts presented to VA's Schedule for Rating Disabilities (Rating Schedule) at 38 C.F.R. Part 4. The percentage ratings contained in the Rating Schedule represent, as far as can be practicably determined, the average impairment in earning capacity resulting from diseases and injuries incurred or aggravated during military service and the residual conditions in civilian occupations. 38 U.S.C.A. § 1155; 38 C.F.R. §§ 3.321(a), 4.1.

In evaluating the severity of a particular disability, it is essential to consider its history. 38 C.F.R. § 4.1 (2013); Peyton v. Derwinski, 1 Vet. App. 282 (1991). 

Separate evaluations may be assigned for separate periods of time based on the facts found. In other words, the evaluations may be staged. Staged ratings are appropriate for any rating claim when the factual findings show distinct time periods during the appeal period where the service-connected disability exhibits symptoms that would warrant different ratings. Fenderson v. West, 12 Vet. App. 119 (1999); Hart v. Mansfield, 21 Vet. App. 505 (2007). Here, the rating for a right ear hearing loss disability has not materially changed and thus will not be addressed as staged ratings. 

If the evidence for and against a claim is in equipoise, the claim will be granted. 38 C.F.R. § 4.3 (2013). A claim will be denied only if the preponderance of the evidence is against the claim. See 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 56 (1990). Any reasonable doubt regarding the degree of disability should be resolved in favor of the claimant. 38 C.F.R. § 4.3. Where there is a question as to which of two evaluations shall be applied, the higher rating will be assigned if the disability picture more nearly approximates the criteria required for that evaluation. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7.

IV. Increased Rating for Right Ear Hearing Loss

The Veteran contends he is entitled to an increased rating in excess of 10 percent for his right ear hearing loss disability. As addressed below, the Board finds that a rating in excess of 10 percent is not warranted. 

Assignment of a disability rating for hearing loss is derived by a mechanical application of the rating schedule to the specific numeric designations assigned after audiology testing is completed. Lendenmann v. Principi, 3 Vet. App. 345 (1992). An examination for hearing impairment for VA purposes must be conducted by a state-licensed audiologist and must include a controlled speech discrimination test (Maryland CNC) and a puretone audiometry test. 38 C.F.R. § 4.85. 

The rating schedule establishes 11 auditory hearing acuity levels based upon average puretone thresholds and speech discrimination. See 38 C.F.R. § 4.85.
"Puretone threshold average" as used in Tables VI and VIa is the sum of the puretone thresholds at 1000, 2000, 3000 and 4000 Hertz and divided by four. This average is used in all cases (including those of § 4.86) to determine a Roman numeral designation from Tables VI and VIa. 38 C.F.R. § 4.85(d).

Table VI, "Numeric Designation of Hearing Impairment Based on Puretone Threshold Average and Speech Discrimination," is used to determine a Roman numeral designation (I through XI) for hearing impairment based on a combination of the percent of speech discrimination (horizontal rows) and the puretone threshold average (vertical columns). The Roman numeral designation is located at the point where the row and column intersect. 38 C.F.R. § 4.85(b).

Table VIa, "Numeric Designation of Hearing Impairment Based Only on Puretone Threshold Average," is used to determine a Roman numeral designation (I through XI) for hearing impairment based only on puretone threshold average. Table VIa is used when the examiner certifies that the use of the speech discrimination test is not appropriate due to language difficulties, inconsistent speech discrimination scores, etc., or when indicated under the provisions of § 4.86. 38 C.F.R. § 4.85(c).

Table VII, "Percentage Evaluations of Hearing Impairment," is used to determine the percentage evaluation by combining the Roman numeral designations for hearing impairment in each ear. The horizontal rows represent the ear having better hearing and the vertical columns represent the ear having the poorer hearing. The percentage evaluation is located at the point where the row and the column intersect. 38 C.F.R. § 4.85(e).

If impaired hearing is service-connected in only one ear, the impairment in both ears will be considered in rating the disability if the impairment in the service-connected ear is to a degree of 10 percent or more and the impairment in the non-service-connected ear qualifies as a disability under 38 C.F.R. § 3.385. See 38 C.F.R. § 3.383. Otherwise, such as in the case at hand, the non-service-connected ear will be assigned a Roman numeral designation for hearing impairment of I. 38 C.F.R. § 4.85 (f).

The Veteran has consistently reported that his hearing loss has worsened in recent years. He reports trouble hearing, and communicating, often yelling in conversations and social situations, and has a hard time hearing the television. See May 2013 Travel Board hearing transcript. The Veteran is competent to report his current symptoms. Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007).

A November 2009 VA examination has been made part of the claims file. On the authorized audiological evaluation in November 2009, pure tone thresholds, in decibels, were as follows:

HERTZ

500
1000
2000
3000
4000
RIGHT
100+
105+
105+
105+
105+
LEFT
15
15
15
20
40

The puretone threshold average was 105+ decibels in the right ear and 23 decibels in the left. Speech audiometry revealed speech recognition ability of 0 percent in the right ear and of 96 percent in the left ear. See November 2009 VA examination. The examiner noted the Veteran had profound sensorineural hearing loss in the right ear and mild high frequency sensorineural hearing loss in the left ear. The VA audiometric findings reflect Level XI hearing acuity in the right ear. Applying this to Table VII, and the assigned Level I hearing acuity in the left ear, under 38 C.F.R. § 4.85 (f), corresponds with a 10 percent disabling rating. Id. 

Next, the Veteran was provided with a VA examination in May 2011. On the authorized audiological evaluation in May 2011, pure tone thresholds, in decibels, were as follows:

HERTZ

500
1000
2000
3000
4000
RIGHT
100+
105+
105+
105+
105+
LEFT
15
15
10
20
35

The puretone threshold average was 105+ decibels in the right ear and 20 decibels in the left. See May 2011 VA examination. Speech audiometry revealed speech recognition ability of 0 percent in the right ear and was unreported in the left ear due to examiner noted invalidity. The examiner noted there were no significant changes in the Veteran's puretone thresholds from the prior examination. The VA audiometric findings reflect Level XI hearing acuity in the right ear. Section 4.85 allows for use of Table VIA (without a speech discrimination score) when indicated under section 4.86, or when the examiner certifies that use of the speech discrimination test is not appropriate applying the left ear to such results in Level I hearing acuity. Applying this to Table VII, and the assigned Level I hearing acuity in the left ear corresponds with a 10 percent disabling rating. Id. 

VA and private treatment records have been associated with the claims file. VA treatment records in January 2010 noted audiology testing was performed. On the authorized audiological evaluation in January 2010, pure tone thresholds, in decibels, were as follows:

HERTZ

500
1000
2000
3000
4000
RIGHT
105+
105+
105+
X
105+
LEFT
10
15
15
15
30

The puretone threshold average was 105+ decibels in the right ear and 19 decibels in the left. Speech audiometry revealed speech recognition ability was unable to be determined in the right ear and of 100 percent in the left ear. The examiner noted that the Veteran's hearing impairment makes it difficult for him to function with daily activities. See January 5, 2010 Audiology Consult. Section 4.85 allows for use of Table VIA (without a speech discrimination score) when indicated under section 4.86, and the VA audiometric findings represent Level XI hearing acuity in the right ear. Applying this to Table VII, and the assigned Level I hearing acuity in the left ear corresponds with a 10 percent disabling rating. Id. 

In addition, the Veteran was provided with a VA examination in January 2015. On the authorized audiological evaluation in January 2015 pure tone thresholds, in decibels, were as follows:

HERTZ

500
1000
2000
3000
4000
RIGHT
105+
105+
105+
105+
105+
LEFT
20
20
20
20
25

The puretone threshold average was 105+ decibels in the right ear and 21 decibels in the left. Speech audiometry revealed speech recognition ability of 0 percent in the right ear and of 96 percent in the left ear. See January 2015 VA examination. The examiner noted sensorineural hearing loss in the right ear and normal hearing in the left ear. Applying these values to Table VI, the result is a Level XI Roman numeral designation for the right ear and a Level I Roman numeral designation for the left ear, corresponding with a 10 percent disabling rating. The examiner noted the Veteran may have trouble hearing in noisy environments related to employment. Id. 

The Board has carefully considered the Veteran's contentions regarding his right ear hearing loss and his symptoms. However, it must be emphasized that the assignment of a schedular disability rating for hearing impairment is derived by a mechanical application of the rating schedule to the numeric designation assigned after valid audiometry results are obtained. Hence, the Board has no discretion in this matter and must predicate its determination on the basis of the results of the audiology studies of record. See Lendenmann v. Principi, 3 Vet. App. 345 (1992). 

The Board notes the Veteran's representative's June 2016 statement asserting that the Veteran's hearing loss has worsened since the January 2015 VA examination. See Appellant's Post Remand Brief. However, there is no evidence that the Veteran's disability has worsened, and the representative has not provided specific evidence supporting this assertion, rather he makes a broad generalization. VA benefits may not be granted based on speculative opinions. Rather, opinions must be made by competent professionals and be based on a rationale that is clear to the Board. The Veteran's representative is not competent to provide a medical opinion. Further, there is no evidence indicating that the Veteran's hearing loss has worsened.

The Board has considered the Veteran's and his representative's statements. However, the schedular criteria for a rating in excess of 10 percent have not been met at any time. The VA examination results and treatment records indicate the Veteran does not have a sufficient hearing impairment to warrant a rating in excess of 10 percent. The Board attaches greater probative weight to the clinical findings of the VA examiners and treatment records. As such, a rating in excess of 10 percent is not warranted. 

Additionally, staged ratings are not warranted, as the Veteran has had a stable level of symptomatology throughout the period on appeal. As the preponderance of the evidence is against the claim, the benefit-of-the-doubt doctrine is inapplicable. 38 C.F.R. § 4.3. For these reasons, the claim is denied, and a rating in excess of 10 percent for the Veteran's service-connected right ear hearing loss disability is not warranted.

V. Extraschedular Rating

Extraschedular consideration involves a three step analysis. Thun v. Peake, 22 Vet. App. 111 (2008), aff'd, 572 F.3d 1366 (Fed. Cir. 2009). The first element requires a finding that the evidence "presents such an exceptional or unusual disability picture that the available schedular evaluations for that service-connected disability are inadequate." See id. at 115. In order to determine whether a disability is "exceptional or unusual," there "must be a comparison between the level of severity and symptomatology of the claimant's service-connected disability with the established criteria found in the rating schedule for that disability." Id. "[I]f the [rating] criteria reasonably describe the claimant's disability level and symptomatology, then the claimant's disability picture is contemplated by the rating schedule, [and] the assigned schedular evaluation is, therefore adequate, and no referral is required." Id.

Neither the first nor second Thun element is satisfied here. The Veteran's service-connected right hearing loss disability is manifested by signs and symptoms such as decreased hearing acuity and difficulty communicating with others. These signs and symptoms, and their resulting impairment, are contemplated by the rating schedule as part of the evaluation of hearing impairment. 38 C.F.R. §§ 4.85, 4.86(a). The rating schedule contemplates varying levels of hearing loss, as well as exceptional patterns of hearing loss. Id.

Given the variety of ways in which the rating schedule contemplates hearing impairment, the Board concludes that the schedular rating criteria reasonably describe the Veteran's disability picture, as it directly contemplates decreased hearing acuity and inherently contemplates all of the repercussions stemming therefrom. There is nothing exceptional or unusual about the Veteran's right ear hearing loss because the rating criteria reasonably describe his disability level and symptomatology. Thun, 22 Vet. App. at 115.

With respect to the second Thun element, the evidence does not suggest that any of the "related factors" are present. In particular, the Veteran does not contend, and the evidence of record does not suggest, that his right ear hearing loss has resulted in frequent hospitalizations. 38 C.F.R. § 3.321(b)(1). Thus, even if his disability picture was exceptional or unusual, referral would not be warranted.

Further, the Board notes that under Johnson v. McDonald, 762 F.3d 1362 (Fed. Cir. 2014), a Veteran may be awarded an extraschedular rating based upon the combined effect of multiple conditions in an exceptional circumstance where the evaluation of the individual conditions fails to capture all the service-connected disabilities experienced. The Veteran is service connected for a right hearing loss disability rated at 10 percent; depressive disorder associated with right ear hearing loss rated at 50 percent; tinnitus rated at 10 percent; and status post fracture of right hand with residual degenerative joint disease rated at 10 percent. The Veteran has not alleged that his currently service-connected disabilities combine to result in additional disability or symptomatology that is not already contemplated by the rating criteria for each individual disability.

Finally, there is no medical evidence indicating the Veteran's right ear hearing loss disability combines or interacts with his other service-connected disabilities in such a way as to result in further disabilities, functional impairment, or additional symptomatology not accounted for by the rating criteria applicable to each disability individually. Accordingly, this is not an exceptional circumstance in which extraschedular consideration may be required to compensate the Veteran for a disability that can be attributed only to the combined effect of multiple conditions.

VI. Service Connection

Generally, to establish service connection a Veteran must show: "(1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service." Davidson v. Shinseki, 581 F.3d 1313, 1315-16 (Fed. Cir. 2009); Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004). Service connection may also be granted for any injury or disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease or injury was incurred in-service. 38 C.F.R. § 3.303(d). 

Service connection may also be established for a current disability on the basis of a presumption that certain chronic diseases, to include hearing loss, manifesting themselves to a certain degree within a certain time after service must have had their onset in-service. 38 U.S.C.A. §§ 1112, 1113, 1137; 38 C.F.R. §§ 3.303, 3.304, 3.307(4), 3.309(a). 

If there is no manifestation within one year of service, service connection for a recognized chronic disease can still be established through continuity of symptomatology. 38 C.F.R. §§ 3.303(b), 3,309; Walker v. Shinseki, 708 F.3d 1331 (2013). Continuity of symptomatology requires that the chronic disease have manifested in-service. 38 C.F.R. § 3.303(b). In-service manifestation means a combination of manifestations sufficient to identify the disease entity, and sufficient observation to establish chronicity at the time, as distinguished from merely isolated findings. Id.

Finally, a disability which is proximately due to or the result of a service-connected disease or injury shall be service connected. When service connection is thus established for a secondary condition, the secondary condition shall be considered a part of the original condition. 38 C.F.R. § 3.310. 

VA is required to give due consideration to all pertinent medical and lay evidence in evaluating a claim for disability benefits. 38 U.S.C.A. § 1154(a). Lay evidence can be competent and sufficient to establish a diagnosis of a condition when (1) a layperson is competent to identify the medical condition, (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007). 

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant. See 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102; see also Gilbert v. Derwinski, 1 Vet. App. 49, 53. 

The Veteran had appealed the denial of service connection for right tympanic membrane perforation, claimed as a right ear disability. For the reasons provided below, the Board finds that service connection for a right ear disability to include tympanic membrane perforation, is not warranted on a direct, secondary or presumptive basis. 

The Veteran reports that his current right ear disability is a result of his service-connected right ear hearing loss and tinnitus and in-service exposure to a grenade explosion. First, addressing direct service connection, the first element of service connection (a current diagnosis) is met. The medical evidence of record reflects that the Veteran has a diagnosis of right ear cholesteatoma. See January 2015 VA examination.

Concerning the second element, there is evidence of an in-service injury, event, or disease. The Veteran contends that his current right ear cholesteatoma is a result of his right ear hearing loss and tinnitus and in-service exposure to a grenade explosion. The Veteran's STRs indicate mild hearing loss was reported in July 1973. See July 6, 1973 ENT Clinic Note. There are no additional complaints or treatment as to the Veteran's right ear while in-service. At separation in July 1973, the report of medical examination noted the Veteran's ears were normal. See July 6, 1973 Report of Medical Examination. As discussed above, the Veteran's in-service noise exposure has been conceded. Thus, in light of the Veteran's consistent statements and the evidence of record there is credible evidence indicating there was an in-service event, injury or disease and thus the Board finds that the second element of service connection, an in-service event, injury or disease has been met. 

Turning to the third element of service connection, the Board finds that the preponderance of the evidence is against a finding that the Veteran's current right ear disability to include tympanic membrane perforation and cholesteatoma is causally related to his active service. The Veteran has consistently reported that his right ear cholesteatoma is related to his active service, and his service-connected hearing loss and tinnitus. The Veteran, however, is not competent to opine as to the presence of a causal relationship between his disability and service, as to do so in this case requires medical expertise. Jandreau, 492 F.3d at 1377.

Examining the medical evidence, VA and private treatment records have been associated with the claims file. Treatment records note ongoing right ear pain, and at times discharge. See November 7, 2008 Otolaryngology Consult. Private treatment records note continued follow-up for right tympanic membrane perforation with associated cholesteatoma. 

The Veteran was afforded a VA examination in January 2015. The examination and opinion found that the Veteran's cholesteatoma was less likely than not incurred in or caused by the claimed in-service event injury or illness, including his exposure to a grenade explosion which caused right ear hearing loss. See January 2015 VA examination. The examiner noted that cholesteatoma can occur as a residual of physical trauma to the middle ear, not just acoustic trauma, however there is no indication of a prior perforation due to or during the Veteran's service which could account for the development of cholesteatoma. The examiner noted there is inadequate medical evidence that acoustic trauma alone, without tympanic membrane perforation can cause a cholesteatoma to develop. Further, the examiner noted that it is less likely than not that the Veteran's hearing loss or tinnitus caused the development of a benign tumor (cholesteatoma) in the middle ear. The examiner noted that the development of a cholesteatoma was not affected by the Veteran's already existing hearing loss and tinnitus, and such is not otherwise affected by hearing loss and/or tinnitus. The examiner noted that while hearing loss and tinnitus can be caused by a cholesteatoma, there is no medical evidence supporting the notion that hearing loss and/or tinnitus has a causative effect on the development and/or worsening of cholesteatoma. Id. The examiner's opinion was based on a thorough examination, was well reasoned with sufficient supporting rationale and based on a review of the claims file. Nieves-Rodriguez v. Peake, 22 Vet. App. 295 (2008). As such the examination is of high probative value.

The Board finds that the preponderance of the evidence is against a finding of a nexus between the Veteran's right ear disability, to include cholesteatoma and his active service. The Veteran's lay statements regarding his ongoing right ear disability are credible but as discussed above the Veteran is not competent to opine as to the presence of a causal relationship. Jandreau, 492 F.3d at 1377. VA and private treatment records associated with the claims file are silent for any indication that the Veteran's right ear disability is related to service. The VA examination and opinion from January 2015, is highly probative and entitled to significant weight. Moreover, the competent and credible evidence of record does not support a finding of a causal connection between the Veteran's right ear disability and his active service. Thus, the third element has not been met, and direct service connection for a right ear disability is not warranted. 38 C.F.R. § 3.303.

Next, addressing secondary service connection, the Veteran is service-connected for a right ear hearing loss and tinnitus, and has a current right ear disability, cholesteatoma. The Board finds that the Veteran's right ear disability was not proximately caused by or aggravated by his service-connected right ear hearing loss and tinnitus. The Board notes the Veteran's statements that his right ear disability is part and parcel of, or secondary to his service-connected right ear hearing loss and tinnitus. The Veteran's lay statements regarding his ongoing right ear disability and his right ear hearing loss and tinnitus are credible but as discussed above the Veteran is not competent to opine as to the presence of a causal relationship. Jandreau, 492 F.3d at 1377. However, the January 2015 VA examination is highly probative and entitled to significant weight. The examiner noted that it is less likely than not that the Veteran's hearing loss or tinnitus caused the development of a benign tumor (cholesteatoma) in the middle ear. See July 2015 VA examination. The examiner noted that the development of a cholesteatoma was not affected by the Veteran's already existing hearing loss and tinnitus, and such is not otherwise affected by hearing loss and/or tinnitus. Further, the examiner noted that while hearing loss and tinnitus can be caused by a cholesteatoma, there is no medical evidence supporting the notion that hearing loss and/or tinnitus has a causative effect on the development and/or worsening of cholesteatoma. Id. As such the competent and credible evidence of record does not support a finding that the Veteran's right ear disability was caused by or aggravated by his service-connected disabilities, and secondary service connection is not warranted.38 C.F.R. § 3.310. 

As a final matter, the Veteran's right ear disability, to include cholesteatoma is not a listed chronic disease under 38 C.F.R. §§ 3.307, 3.309(a). Therefore, service connection is not warranted on a presumptive basis. Likewise, as the provisions regarding continuity of symptomatology require that the disease be a listed chronic disease, that provision is also inapplicable. 38 C.F.R. §§ 3.303(b), 3.309(a); Walker, 708 F.3d 1331. 

In short, although the Veteran has established a current disability, and an in-service injury, the preponderance of the evidence weighs against the claim; therefore, the benefit of the doubt rule is not applicable. See 38 U.S.C.A. § 5107(b); Ortiz, 274 F.3d at 1364; Gilbert, 1 Vet. App. at 55-57; 38 C.F.R. § 3.102. For these reasons, the claim is denied.

ORDER

Entitlement to a rating in excess of 10 percent for right ear hearing loss disability, is denied.

Entitlement to service connection for a right ear disability, to include right tympanic membrane perforation, and as secondary to right ear hearing loss and tinnitus, is denied. 

____________________________________________
L. M. BARNARD
Acting Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs